## A99A2354. THE STATE v. WINNIE.
(529 SE2d 215)

RUFFIN, Judge.

The State appeals the trial court's grant of Richard Winnie's motion to suppress evidence resulting from a traffic stop. Because the evidence supported the trial court's determination that there was no articulable suspicion for the stop, we affirm.

When faced with a motion to suppress evidence based on an illegal search, the burden is on the State to prove the lawfulness of the

---

search.[1] On appeal, we construe the evidence in the light most favorable to uphold the court's ruling.[2] The trial court's application of the law to undisputed facts is subject to de novo review.[3]

Officer John Ottaway testified that, at about 4:00 a.m. on September 12, 1998, he was driving on Currahee Street when he saw a truck turn into the parking lot of a Salvation Army facility on East Franklin Street. Ottaway thought this was suspicious because the facility was closed, so he turned around to look for the truck. As Ottaway pulled into the back of the facility, the truck began to drive away. Ottaway activated his blue lights, and the truck stopped. A subsequent search of the driver, Winnie, resulted in the discovery of a quantity of cocaine and a pill.

Ottaway testified that he did not observe any traffic violations by Winnie and had not received any report of criminal activity at the Salvation Army facility. He decided to stop the truck because "[i]t was odd that it was parked behind a closed business at 4 o'clock in the morning with its lights off." He said he stopped the truck "to identify the occupants [and] [j]ust to investigate . . . and find out what they were doing behind a closed business." He said there "[c]ould have been criminal activity going on. . . . Could have been there to commit a burglary."

Ottaway did not indicate that his decision to stop the truck was influenced by the fact that it started to pull away as he approached, nor did he claim that it appeared the driver was attempting to flee after noticing the police vehicle. In holding that there was no articulable suspicion for the stop, the trial court found that "the vehicle had begun to exit the parking lot as Officer Ottaway approached. There was no evidence of flight or evasive action."

In *Hughes v. State*,[4] our Supreme Court set forth the principles governing the legality of an investigative stop:

> [A]lthough an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining

[1] *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996).
[2] Id. at 839.
[3] Id.
[4] 269 Ga. 258 (497 SE2d 790) (1998).

officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.[5]

This case is similar to *Attaway v. State*,[6] where the police received a report that a car was circling around a subdivision several times late at night. An officer followed the car for a while and then stopped it when it was on a road leading out of the subdivision. In reversing the denial of Attaway's motion to suppress, we noted that

[n]o evidence was introduced that such activity violated any local ordinance or other applicable law, or that there was any other basis for the stop. While the police officer testified that there had been past incidents of vandalism in the area, the police received no information that Attaway had committed any such acts. Although, as in *Hughes*, the police might have been justified in closely observing Attaway's actions, his behavior did not provide a particularized and objective basis for suspecting him of criminal activity sufficient to justify an investigatory stop.[7]

Clearly, an officer is justified in "closely observing" a vehicle that pulls into the parking lot of a closed business at 4:00 in the morning. However, as a police officer admitted at the hearing on the motion, such conduct itself is not illegal. In holding that there was no articulable suspicion for the stop, the trial court relied upon the fact that "the vehicle had begun to exit the parking lot as Officer Ottaway approached." Although Ottaway might have suspected an attempted burglary when he saw the truck enter the parking lot, the basis for such suspicion disappeared when the truck started to leave the parking lot. Ottaway did not claim that the truck had been parked or out of his sight long enough to have already accomplished a burglary. Thus, once the vehicle started to leave the premises, there was no longer any "particularized and objective" reason for Officer Ottaway to suspect that the occupants of the vehicle were involved in criminal activity.

Although the State suggests that Winnie was attempting to flee from the police when he started to drive away, the trial court found to the contrary, holding that "[t]here was no evidence of flight or eva-

---

[5] (Citations and punctuation omitted.) Id. at 259-260.
[6] 236 Ga. App. 307 (511 SE2d 635) (1999).
[7] (Punctuation omitted.) Id. at 309.

sive action." This finding is not clearly erroneous, as the State presented no evidence that the occupants of the truck noticed Ottaway's vehicle before they started to pull away. Indeed, Officer Ottaway never stated that he believed the occupants were attempting to flee or even that he thought they had noticed him before they began to drive off. "In the absence of evidence of record *demanding* a finding contrary to the judge's determination, this court will not reverse the ruling sustaining a motion to suppress."[8] Accordingly, we cannot say that the trial court's finding that the truck had already started to exit the parking lot when Ottaway approached was clearly erroneous.[9]

The State's reliance on *State v. Hodges*[10] is misplaced. In that case, officers approached a vehicle parked in an unlit area of a shopping center parking lot late at night, when all shops except a Dairy Queen were closed. When the officers activated their blue lights to announce their identity, they saw the occupants of the car "frantically [begin] pushing something underneath the seat very quickly."[11] The officers asked the occupants to exit the car. They did so and rapidly moved far away from the vehicle. The officers looked inside the vehicle and saw contraband in plain view. We held that "the circumstances created a justifiable suspicion of the conduct of the appellees so as to warrant the limited investigative detention."[12] In this case, by contrast, Winnie merely pulled into a parking lot and then began to drive away. Officer Ottaway noticed no other suspicious conduct while the truck was on the premises and before it started to drive away. Accordingly, at the time he made the stop, Ottaway had no "particularized and objective" reason for believing that the occupants of the truck were engaged in criminal activity.[13]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 3, 2000.

*Michael H. Crawford, District Attorney, William C. Akins, Assistant District Attorney*, for appellant.

---

[8] (Punctuation omitted; emphasis supplied.) *State v. Betsill*, 144 Ga. App. 267, 268 (2) (240 SE2d 781) (1977).

[9] See *Young v. Kitchens*, 228 Ga. App. 870, 874 (3) (492 SE2d 898) (1997) ("It is the [trier of fact's] function to draw an inference from the evidence when more than one inference can be drawn.").

[10] 184 Ga. App. 21 (360 SE2d 903) (1987).

[11] Id. at 22.

[12] Id. at 24.

[13] Because of our holding above, we need not determine whether the scope of the detention and search was excessive.

*Healy & Svoren, Timothy P. Healy, Nina M. Svoren*, for appellee.