## A04A1709. DAWSON v. THE STATE.
### (609 SE2d 158)

MIKELL, Judge.

Following a jury trial, Michael John Dawson was convicted of theft by receiving stolen property (Count 1), attempting to elude an officer (Count 2), obstruction of an officer (Count 3), and driving with a suspended license (Count 4).[1] He appeals the denial of his motion for directed verdict and motion for new trial, arguing that the evidence was insufficient to support his conviction for theft by receiving stolen property. He also contends that the trial court erred in denying his motion to suppress and in failing to give a requested charge on the lesser included offense of criminal trespass. Finally, Dawson alleges that he received ineffective assistance of counsel. For reasons that follow, we affirm Dawson's conviction.

1. In two related enumerations, Dawson contends that the evidence was insufficient to support his conviction for theft by receiving stolen property and that the trial court erred in denying his motion for directed verdict because the state failed to prove that he knew the vehicle was stolen. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

This test applies "when the sufficiency of the evidence is challenged, whether the challenge arises from the [denial] of a motion for directed verdict or the [denial] of a motion for new trial."[3]

---

[1] Dawson's first trial resulted in convictions on Counts 2, 3 and 4, but a hung jury and mistrial on Count 1. His second trial resulted in a conviction on Count 1.

[2] (Footnote omitted.) *Sexton v. State*, 268 Ga. App. 736 (1) (603 SE2d 66) (2004). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citation and punctuation omitted.) *Millirons v. State*, 268 Ga. App. 644, 645 (1) (602 SE2d 346) (2004).

Viewed in this light, the record shows that on July 7, 2002, Brett Gerby reported to Marietta police that his Jeep Wrangler had been stolen.[4] Shortly before midnight on July 11, 2002, Marietta Police Officers Scott Gagnon and Andrew Fondas were on patrol in a known drug area when they noticed a Jeep. When the officers turned toward the Jeep, the driver accelerated out of the area. The officers lost the Jeep but saw it again in the area 15 to 30 minutes later. The officers pulled behind the Jeep and ran its license plate. A radio dispatcher told the officers that the Jeep had been reported stolen. Officer Fondas activated his siren and blue light, but the driver refused to stop. Instead, the driver accelerated, drove though several stop signs, and turned onto a dead-end street. The driver then jumped out of the moving vehicle and began running, leaving his passenger inside. The vehicle continued to roll until it struck a telephone pole. Officer Gagnon chased and apprehended the driver. The driver, who was driving on a suspended license, was later identified as Dawson. A videotape of the incident taken from the patrol car was played for the jury. At trial, both officers identified Dawson.

The state introduced similar transaction evidence showing that Dawson pleaded guilty to theft by receiving stolen property in 1986. The victim of that incident, Louise Marshall, testified that in February 1986, she reported to police that her Cadillac Coupe De Ville had been stolen. On the evening of February 14, 1986, Marietta Police Officers Williams and Burtz were dispatched to a possible stolen vehicle. Officer Williams attempted to stop the vehicle by activating his siren and blue light, but the driver refused to stop. When the vehicle finally came to a stop, the driver jumped out and began running. Officer Williams chased and apprehended the driver, who was identified as Dawson.

> Although possession of recently stolen property is not alone sufficient to sustain a conviction for receiving stolen property, guilt may be inferred from possession along with other evidence — including circumstantial evidence — of guilty knowledge which would excite suspicion in the mind of an ordinarily prudent person.[5]

Four days after Gerby reported his Jeep stolen, Dawson was seen driving the vehicle in a known drug area. Dawson sped off when officers tried to stop him, jumped out of the moving Jeep, and fled on foot. A short chase ensued before Dawson was apprehended by police.

---

[4] The vehicle had a North Carolina tag.

[5] (Citation omitted.) *Priester v. State*, 249 Ga. App. 594, 598 (5) (a) (549 SE2d 429) (2001).

Several days after Marshall reported her Cadillac stolen in February 1986, Dawson was seen driving the vehicle. Dawson sped off when officers tried to stop him, jumped out of the Cadillac, and fled on foot. A short chase ensued before Dawson was apprehended by police. Contrary to Dawson's contention, his conduct after being cornered by officers, his possession of stolen property, and the similar transaction evidence were sufficient to authorize the jury to infer guilty knowledge. Thus, the evidence was sufficient to support Dawson's conviction for theft by receiving stolen property, and the trial court did not err in denying his motion for directed verdict or motion for new trial.[6]

2. In his next two enumerated errors, Dawson challenges the denial of his motion to suppress. He first contends that the officers did not have a "particularized and objective basis for suspecting him of criminal activity sufficient to justify running the tag on the vehicle or an investigative stop." He also argues that counsel was ineffective for failing to pursue the motion to suppress.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.[7]

So viewed, the evidence adduced at the first trial[8] demonstrates that shortly before midnight on July 11, 2002, Officers Fondas and Gagnon noticed a Jeep Wrangler circle the block several times in a "known drug area." The officers pulled behind the vehicle and ran its tag. A radio dispatcher told the officers that the Jeep had been reported stolen. Officer Fondas activated his siren and blue light, but Dawson refused to stop. Instead, he accelerated, drove though several stop signs, and turned onto a dead-end street. Dawson then jumped out of the moving vehicle and began running. The vehicle continued to roll until it struck a telephone pole. The officers chased and apprehended Dawson.

(a) Because the trial court ruled on Dawson's motion to suppress, we reject the state's contention that Dawson waived his right to

---

[6] Compare *Higginbotham v. State*, 124 Ga. App. 489, 490 (3) (184 SE2d 231) (1971) (standing alone, "unexplained possession of recently stolen goods . . . will not support the inference [of guilty knowledge] or authorize conviction") (citation omitted).

[7] (Citations and punctuation omitted.) *Bayshore v. State*, 258 Ga. App. 65-66 (573 SE2d 97) (2002).

[8] Dawson filed his motion to suppress before the second trial. Because the trial court already heard testimony from Officers Fondas and Gagnon during the first trial, it relied on that evidence in ruling on the motion.

contest the validity of the traffic stop on appeal.[9]

Dawson's claim that officers did not have a particularized and objective basis for suspecting him of criminal activity sufficient to justify running the tag on the vehicle is meritless.[10] Dawson cites no authority in support of this claim and we find none.

As for Dawson's claim that the stop was made without any reasonable basis under the Fourth Amendment, we disagree. "[A]n officer may conduct a brief investigatory stop of a vehicle if that stop is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[11] "In deciding if reasonable suspicion existed, a reviewing court must look at the 'totality of the circumstances' to determine whether the detaining officer had a 'particularized and objective basis' for suspecting criminal activity."[12] Officers observed the vehicle in question circle the block several times in a known drug area. When they ran the tag it came up stolen. The officers then activated their siren and blue light, but Dawson refused to stop the vehicle. These facts were sufficient to give rise to a reasonable suspicion of criminal conduct. Further, as Dawson was knowingly using a stolen vehicle on a public roadway, he "was in constant expectation of intrusion by the authorities."[13]

Dawson's reliance on *State v. Winnie*[14] is misplaced. In that case, an officer became suspicious of a vehicle after it pulled into the parking lot of a Salvation Army facility at 4:00 a.m. When the officer turned around to look for the vehicle, it drove away. The officer activated his siren and blue light and stopped the vehicle. A subsequent search of the driver resulted in the discovery of a quantity of cocaine.[15] This Court affirmed the grant of the defendant's motion to suppress, finding that once the vehicle started to leave the premises, there was no longer any "particularized and objective" reason for the

---

[9] But see *Evans v. State*, 235 Ga. App. 577, 579 (1) (510 SE2d 313) (1998) (where trial court did not rule on motion to suppress and defendant did not object to alleged improper testimony at trial, defendant waived his right to challenge the evidence on appeal).

[10] See, e.g., *Maxwell v. State*, 249 Ga. App. 747, 748 (549 SE2d 534) (2001) (while responding to report from another officer of potential DUI, officer ran driver's Texas license tag, which was reported to be expired); *Self v. State*, 245 Ga. App. 270, 274 (3) (a) (537 SE2d 723) (2000) (officer checked vehicle's license tag prior to stopping it and determined that the tag belonged to another vehicle); *Cunningham v. State*, 231 Ga. App. 420 (1) (498 SE2d 590) (1998) (officer patrolling in known high drug area ran tag after he observed a vehicle unfamiliar to him being driven slowly by defendant, whom he did not know), where officers ran unchallenged checks on tags.

[11] (Citation and punctuation omitted.) *Self*, supra. See also *Cunningham*, supra at 422 (1) (" 'police officers are authorized to use information received by radio as part of their basis for establishing probable cause' ") (citation omitted).

[12] (Citations omitted.) *Howard v. State*, 265 Ga. App. 835, 836 (595 SE2d 660) (2004).

[13] *Burgeson v. State*, 267 Ga. 102, 105-106 (3) (b) (475 SE2d 580) (1996).

[14] 242 Ga. App. 228 (529 SE2d 215) (2000).

[15] Id. at 229.

officer to suspect that the occupants of the vehicle were involved in criminal activity.[16] Here, as discussed above, the officers observed the vehicle circle the block in a known drug area; the vehicle had been reported stolen; and Dawson attempted to flee when officers tried to stop him. Under these circumstances, the trial court's determination that the stop of the vehicle was valid was not clearly erroneous.

(b) Dawson's claim that counsel was ineffective for failing to pursue the motion to suppress also fails.

At the hearing on the motion for new trial, defense counsel testified that he filed a motion to suppress and argued that officers had no reason to run the vehicle's tag number. Counsel testified that he believed there was a difference between running an in-state tag and an out-of-state tag and asked the trial court to give him additional time to research the issue. The trial court granted counsel's request, giving him until the following morning to support his position. Counsel testified that he investigated the issue, but did not raise it because he "had misspoke as far as [his] understanding of the law." Later during the hearing, counsel confirmed that he "abandoned the argument that the police were not justified in running an out-of-state tag."

"When trial counsel's failure to [pursue] a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel [pursued] the motion."[17] Given our holding in Division 2 (b), Dawson's counsel was not ineffective for failing to pursue a meritless motion to suppress.

3. Finally, we find no merit in Dawson's contention that the trial court erred in denying his request to charge the jury on the lesser included offense of criminal trespass. Dawson specifically argues that "based on the evidence presented at trial, [he] could have been convicted of criminal trespass under the actual evidence test because he 'maliciously interfered with the possession of [sic] use of the property of another person without consent of that person.'"

Under Georgia law, a lesser offense can be included in a greater offense either as a matter of law or as a matter of fact.[18] OCGA § 16-8-7 (a) provides that, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains

---

[16] Id. at 230.

[17] (Citation and punctuation omitted.) *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004). See also *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003) (" 'failure to pursue a futile motion does not constitute ineffective assistance' ") (footnote omitted); *Brown v. State*, 239 Ga. App. 674, 676 (1) (522 SE2d 41) (1999) (counsel not ineffective for failing to pursue meritless motion to suppress).

[18] *Neal v. State*, 264 Ga. App. 311, 312 (2) (a) (590 SE2d 168) (2003).

stolen property which he knows or should know was stolen." OCGA § 16-7-21 (a) provides that,

> [a] person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person . . . or knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person.

The indictment here, which charges that Dawson "did retain a *stolen* Jeep Wrangler motor vehicle which [he] knew or should have known was *stolen*," does not include the elements of criminal trespass. (Emphasis supplied.) Further, in light of our holding in Division 1, that the evidence was sufficient to infer guilty knowledge, criminal trespass cannot be considered, as a matter of fact, a lesser included offense of theft by receiving stolen property. It follows that the trial court did not err in failing to charge the jury on criminal trespass.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 6, 2005.

*Robert A. Maxwell*, for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Henry R. Thompson, Assistant District Attorneys*, for appellee.

