**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 7, 2020**

# In the Court of Appeals of Georgia

A19A1843. LIGGETT v. THE STATE.

RICKMAN, Judge.

Benjamin Liggett was convicted of driving under the influence of alcohol (DUI), less safe, and failure to maintain lane. On appeal, he asserts a violation of his right against self-incrimination related to refusing a breath test, errors regarding admission of the police report, and ineffective assistance of counsel. We find no reversible error and affirm.

Construed in favor of the verdict, see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that a passenger in a car traveling from Gainesville to Dawsonville observed a small SUV "swerving from left to right, crossing the lines, kind of going off the road," as well as crossing the center yellow line thereby almost causing multiple accidents and "[riding] in the turning lane

a little bit and then jerk[ing] back over as if maybe it was a lane of its own." The passenger became concerned, called 911, and reported the license tag number to the 911 operator. The passenger and driver followed the SUV into a grocery store parking lot, parked in a well-lighted area one or two rows over from and facing the SUV, and waited for the police to arrive. The passenger saw Liggett exit the vehicle and saw him stagger and fail to walk in a straight line.

Two officers responded to the scene. One of the officers was trained in DUI detection, and he observed the odor of alcohol on Liggett, dilated pupils, bloodshot and watery eyes, and slurred speech, as well as that Liggett was unsteady on his feet; the officer testified that each of these observations was an indication that Ligget had consumed alcohol or drugs. The officer initiated field sobriety tests on Liggett, who lost his balance during the walk-and-turn evaluation and refused to take the remaining tests. The officer arrested Liggett, and he eventually found keys to the SUV in Liggett's right front pocket and open beer bottles in the vehicle. The officer read Liggett the Georgia implied consent notice and asked him to take a breath test, but Liggett refused. Liggett and his wife testified that Liggett had one beer that afternoon.

A police report prepared by the first officer on the scene was admitted into evidence and published to the jury for review, but it was not allowed out with the jury for use during deliberations.

Following the presentation of evidence, the jury returned a verdict of guilty on both counts. Liggett appeals.

1. Liggett contends that, in violation of his right against self-incrimination found in the Georgia Constitution, the trial court erred by admitting evidence that he refused a breath test and by charging the jury that it could therefore infer that the test would have shown the presence of alcohol.[1] We find no plain error.

(a) At trial, Liggett did not object to the introduction of his refusal to take the breath test.[2] Accordingly, we review this contention for plain error. See OCGA § 24-1-103 (a), (d); *Hamlett v. State*, 350 Ga. App. 93, 99 (2) (828 SE2d 132) (2019). Similarly, although Liggett objected during the charge conference to the charge on the adverse inference, he failed to object after the jury was so charged. Accordingly,

---

[1] The court charged that because Liggett refused to submit to a breath test, the jury could "infer that the test would have shown the presence of alcohol, though, not that the alcohol impaired his driving."

[2] Liggett moved in limine to exclude the results of the breath test on the ground that it violated his right against self-incrimination under the U. S. and Georgia constitutions, but he did not obtain a ruling on the motion.

3

we review the jury charge for plain error, too. See *Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019).

> The test for a finding of plain error has four prongs:
>
> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted, emphasis in original.) *Cheddersingh v. State*, 290 Ga. 680, 683 (2) (724 SE2d 366) (2012); see also *White v. State*, 305 Ga. 111, 120 (3) (823 SE2d 794) (2019) (re: admission of evidence); *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (re: jury charges); OCGA § 17-8-58 (b) (same).

4

(b) Here, there was a clear and obvious error and no suggestion of affirmative waiver of the error.[3] Compelling a person to breathe into a breath-testing device violates the Georgia Constitution's right against compelled self-incrimination because that right prohibits the compulsion of incriminating acts as well as testimony. See *Olevik v. State*, 302 Ga. 228, 235-246 (2) (c) (806 SE2d 505) (2017). That same right prohibits the State from introducing evidence that a defendant exercised his right to refuse such a test. See *Elliott v. State*, 305 Ga. 179, 210 (IV) (824 SE2d 265) (2019). Although *Elliott* was decided over a year after Liggett's trial, "whether an error is considered 'clear or obvious' under the second prong of the plain error test is judged under the law existing at the time of appeal, regardless of whether the asserted error in the trial court was plainly incorrect at the time of trial, plainly correct at the time of trial, or an unsettled issue at the time of trial." (Emphasis omitted.) *Lyman v. State*, 301 Ga. 312, 318 (2) (800 SE2d 333) (2017). Accordingly, *Elliott* applies to Liggett's appeal, and Liggett has met the first and second prong of the plain error test. See Id.

---

[3] "For purposes of plain error review, an affirmative waiver requires the intentional relinquishment or abandonment of a known right, and the mere failure to object does not constitute such an affirmative waiver because it is more appropriately described as a forfeiture." (Citation and punctuation omitted.) *State v. Parks*, 350 Ga. App. 799, 810 (1) (830 SE2d 284) (2019). No affirmative waiver exists here.

(c) The third and fourth prong require showing that the error affected the appellant's substantial rights, i.e., that it affected the outcome of the trial court proceedings, and that it seriously affected the fairness, integrity, or public reputation of the proceedings. Importantly, "plain-error analysis, which must be distinguished from harmless-error analysis, requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citations and punctuation omitted.) *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013).

With regard to the DUI charge, the State had to prove that Liggett was driving or in actual physical control of the SUV, while under the influence of alcohol, to the extent that it was less safe for him to drive. OCGA § 40-6-391 (a) (1). The evidence at issue (that Liggett refused a breath test) and the jury charge at issue (allowing an inference of the presence of alcohol) pertain only to the question of whether Liggett was under the influence of alcohol at the time. The facts presented at trial on whether Liggett was under the influence of alcohol were that Liggett staggered and failed to walk in a straight line upon exiting the SUV; that he smelled of alcohol; that he had dilated pupils, bloodshot and watery eyes, slurred speech, and was unsteady on his feet, each of which was, in the opinion of the officer, an indication that Ligget had consumed alcohol or drugs; that he lost his balance during the walk-and-turn

6

evaluation; that he had open beer bottles in the vehicle; and that he admitted that he had at least one beer that afternoon. Liggett did not offer any alternative explanation for why he had physical manifestations of being under the influence of alcohol.

Given this strong independent evidence that Liggett was under the influence of alcohol, including his own admission of recently drinking a beer, and his failure to offer an explanation for his physical manifestations of being under the influence of alcohol, we conclude that he has failed to affirmatively show that evidence that he refused a breath test and a corresponding charge allowing the jury to infer the presence of alcohol probably affected the jury's decision that he was under the influence of alcohol while driving. Compare *Wagner v. State*, 311 Ga. App. 589, 591-592 (2) (716 SE2d 633) (2011) (physical precedent only) (plain prejudicial error occurred where, in addition to inference of the presence of alcohol, the jury was instructed that it could infer that the alcohol impaired the defendant's driving).

2. Liggett contends the trial court abused its discretion by admitting the police report into evidence over his objections: at trial he raised the continuing witness rule,[4]

---

[4] "Under the continuing witness rule, where the jury has heard written testimony read from the witness stand it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once." (Citation, punctuation, and emphasis omitted.) *Franklin v. State*, 351 Ga. App. 539, 549-550 (4) (b) (ii) (831

stated that police reports generally are not admissible, and added that "[t]here's a variety of reasons why it is not admissible." The court ruled that the report was admissible and could be published to the jury but that the jury could not use it during deliberations because of the continuing witness rule. A trial court's evidentiary rulings are reviewed for abuse of discretion. See *Bennett v. State*, 304 Ga. 795, 798 (2) (822 SE2d 254) (2018). We find no abuse of discretion here.

After the defendant testified, the State called a rebuttal witness — the first officer on the scene. On direct, the officer did not mention his police report. On cross-examination, Liggett's first question was whether the officer made a report. And the officer later admitted that, generally, if aspects of a police report are missing it becomes difficult to remember what happened years later. On redirect, the State introduced the officer's report and published it to the jury following Liggett's objections and the trial court's ruling.

On appeal, Liggett argues that the report was not admissible because he never specifically called the officer's credibility into question and therefore the State had no basis for rehabilitating him through admission of the report; he also asserts that the

SE2d 186) (2019). The continuing witness rule was not affected by the enactment of the new Evidence Code. *Rainwater v. State*, 300 Ga. 800, 804 (2) n. 3 (797 SE2d 889) (2017).

8

report should have been redacted. See generally *Cox v. State*, 263 Ga. App. 266, 268 (2) (b) (587 SE2d 205) (2003) (a claim of recent fabrication in the officer's trial testimony may render a police report admissible). But Liggett did not raise these arguments below and they therefore are waived. See *Evans v. State*, 253 Ga. App. 71, 75 (1) (558 SE2d 51) (2001). Further, the jury did not have the report during deliberations, and accordingly, the continuing witness rule is inapplicable. See *Inglett v. State*, 239 Ga. App. 524, 528 (7) (521 SE2d 241) (1999); *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 111 (4) (480 SE2d 40) (1996). We find no error.

3. Liggett contends the trial court erred by briefly publishing the police report to the jury instead of having the officer read the report; the jury did not have the report during deliberations. Because this objection was not raised below,[5] Liggett asserts plain error. But Liggett has failed to show clear or obvious error affecting his substantial rights. He has not shown any clear law stating that it is reversible error to publish a police report to the jury rather than having the officer read it. And we fail to see harm arising from the difference between reading the report and briefly

---

[5] Liggett objected only on the "continuing witness issue" and on the ground that the report contained his "personal contact information."

9

showing it to the jury. Thus, there is no basis for reversal, and no validity to any corresponding claim of ineffective assistance of counsel.

4. Finally, Liggett contends his trial counsel was ineffective when he failed to object to the Officer's testimony comparing Liggett's case to others he had handled in the past on the ground that the testimony was not relevant. "To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984)." (Citation omitted.) *Ramirez v. State*, _ Ga. _ (2) (Case No. S19A1504, decided Dec. 23, 2019).

> The record shows that the officer testified,
>
> I don't want to waste anybody's time and arrest somebody on bad cases – on cases [that could go either way]. Again, a thousand DUI investigations, I have been up in this courtroom for hours and hours and hours and hours and hours on end the past 15 years, and I felt like this was a really good DUI case, and I made the arrest.

Liggett's attorney did not object. At the hearing on the motion for new trial, Liggett's attorney stated that she had "no good reason" for not objecting to this testimony and

10

that she did not have a strategic reason. Pretermitting whether counsel's performance was deficient, we find no prejudice.

"To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Ramirez*, _ Ga. at _ (2). Here, the gist of the officer's testimony was that he arrested Liggett because his past DUI enforcement experience told him that Liggett's case was strong. But the officer had already testified to the facts that led him to conclude that Liggett should be arrested for DUI less safe; he summarized the factors:

> The eyewitness; the odor; the slurred speech; the unsteady on his feet; the dilated pupils; bloodshot watery eyes. I investigated over a thousand DUIs, and based on all that, I took all that into consideration and I felt like he was less safe to drive.

Thus, the challenged testimony did not differ significantly from other testimony by the officer. And "the expression of the opinion of a witness amounting to a conclusion is harmless where there is ample evidence to support the inference." (Citation and punctuation omitted.) *Lopez v. State*, 267 Ga. App. 178, 181 (3) (598 SE2d 898) (2004). Because Liggett has not shown prejudice, we find no ineffective assistance for counsel's failure to object to the officer's challenged statements.

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*

11